Hillsborough
No. 79-067

ALLSTATE INSURANCE COMPANY

v.

JOSEPH I. CARR, JR., JANET CARR
AND
SUSAN WARGO, ADMINISTRATRIX OF ESTATE

OF JAMES WARGO, JR.

December 12, 1979

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Alan B. Rindler* orally), for the plaintiff.

*Boyer Legal Professional Association*, of Nashua (*Richard E. Boyer* orally), for defendants Joseph and Janet Carr.

*Prunier, Mazerolle & Frasca*, of Nashua (*Stephen J. Frasca* orally), for defendant Susan Wargo.

PER CURIAM. This case involves issues arising out of a declaratory judgment action filed by Allstate Insurance Company pursuant to RSA 491:22 to determine its obligations to its insured, Joseph I. Carr, Jr.

The following facts are not disputed based upon the depositions of Joseph and Janet Carr. In May 1976, Susan Wargo was living in the home of Joseph and Janet Carr. On May 14, 1976, the Carrs returned home from a banquet to find Susan being attacked by her estranged husband, James Wargo. James claimed that Susan was seeing another man and he demanded the man's name. As the Carrs attempted to intercede, James struck Mrs. Carr. When he subsequently calmed down, the Carrs left the Wargos together and retired. Later that night, in response to Susan's scream, Joseph Carr went back downstairs and broke up another altercation.

Two days later James Wargo telephoned Joseph Carr and stated that he was coming to the Carrs' home to learn his rival's name so he could kill him. He also threatened Mr. Carr. Carr called the police who refused to come to the Carr home. Before Mr. Wargo arrived, Mr. Carr placed a loaded revolver on the dining-room table. When James arrived he entered the house by force and advanced toward Mr. Carr, who retreated to the dining area and picked up the gun.

Mr. Carr testified in his deposition that he warned James he would use the gun but that James did not heed the warning; that James finally lunged at him, and in attempting to escape, Mr. Carr stumbled against a wall and accidentally fired the weapon. He denied any intention of shooting or killing Mr. Wargo. The bullet hit Mr. Wargo in the neck and he died on June 18, 1976.

The defendants in this declaratory action are Joseph I. Carr, Jr., Janet Carr, and Susan Wargo, administratrix of the estate of James Wargo, Jr. Two civil actions are pending against Joseph Carr in the superior court; one brought by James Wargo, Jr., before his death, alleging bodily injury, and the other brought by Susan Wargo, alleging wrongful death. Both declarations allege that Joseph Carr's act of shooting James Wargo was reckless, careless, and negligent.

The issue at the declaratory action hearing was whether the shooting of James Wargo on May 16, 1976, was expected or intended from the standpoint of the insured and thus within an exclusionary clause in Allstate's policy. The homeowner's policy issued by Allstate to Joseph and Janet Carr provided coverage for "all sums the insured shall become legally obligated to pay as damages because of bodily injury . . . caused by an occurrence." The policy stated further that Allstate would defend any suit against the insured seeking damages on account of bodily injury, "even if any of the allegations of the suit are groundless, false or fraudulent." The policy excluded any coverage for injuries caused by an action of the insured which were "expected or intended from the standpoint of the insured."

In its petition for declaratory judgment, Allstate claimed that the injuries caused by Mr. Carr's actions on May 16, 1976, fell within the exclusionary clause because they were "expected or intended from the standpoint of the insured," and that Allstate had neither the duty to defend Mr. Carr in the pending civil actions nor the duty to indemnify any judgments against him in those actions.

The Superior Court (*Loughlin*, J.), sitting without a jury and having only the Carrs' depositions before it, found that the shooting was intentional from the standpoint of the insured, and that Allstate had no duty to defend or to indemnify Joseph Carr. Despite the qualms of the trial judge, counsel insisted that the case be submitted on depositions to avoid having witnesses travel from California. Defendants Carr and Wargo both excepted to the trial court's denials of their motions to set aside the decree. These exceptions were reserved and transferred to this court.

Although Mr. Carr said that the shooting was unintentional, the trial judge apparently inferred intent from the defendant's deposition testimony regarding his actions prior to the shooting and his concern for his wife's safety. Allstate, Mr. Carr or Mrs. Wargo certainly could have demanded a jury trial in the declaratory judgment petition on the disputed issue of intent. *Employers Liability Assurance Corp. v. Tibbetts*, 96 N.H. 296, 298, 75 A.2d 714, 717 (1950). However, all agreed to go forward without a jury.

In their motions to set aside the decree, the Carrs and Susan Wargo argue that the court's findings and rulings were against the law and the weight of the evidence and that Allstate failed to sustain its burden of proof under RSA 491:22-a.

When there is no jury, counsel must save the legal question of sufficiency of evidence by an exception to denial of a motion for nonsuit. *Hauser v. Calawa*, 116 N.H. 676, 677, 366 A.2d 489, 491 (1976); *Simes v. Atwell*, 85 N.H. 537, 161 A. 381 (1932). In this case no one moved for nonsuit; the parties agreed to try intent without a jury.

Unlike sufficiency, the factual issue whether the decree is against the weight of the evidence may be preserved if it is a basis for the motion to set aside the decree. However, this court will not overturn a trial court merely because we might have reached a different result. *Tillinghast v. Spencer*, 119 N.H. 116, 398 A.2d 846 (1979). The Carrs and Mrs. Wargo argue, however, that in this case, because the trial judge decided the case on the depositions and therefore could not have observed the demeanor and credibility of the witnesses, the standard of review should be broadened. We agree.

Joseph Carr testified that "I ran out of the room about the same time that he made a quick move from the steady pace. He made a large step, and when I hit the wall, the gun went off." He said that "I stumbled a little bit, the gun went off, then he fell." He also said under oath, "I did not mean to shoot him," and "I did not intentionally aim the gun and fire it at him, no." He insisted he stumbled, lost his balance and then the gun went off.

Apparently the trial court chose to disbelieve the deposition testimony of Joseph Carr, but even assuming it could have so concluded, that would have left the case in a state of equipoise. The plaintiff insurance company offered no other testimony to refute Carr; therefore, it has not met its burden of proof under RSA 491:22-a. *See Hartford Ind. Co. v. Wolbarst*, 95 N.H. 40, 57 A.2d 151 (1948).

The underlying tort action is remanded for jury trial on the merits, and the Wargo administratrix will, of course, bear the burden of proving that the alleged acts of the defendant Carr were reckless, careless, or negligent.

*Exceptions sustained; remanded for trial.*

KING, J., did not sit; BROCK, J., concurred specially; the others concurred.

BROCK, J., concurring specially:

While I concur in the majority opinion, I would emphasize that upon trial of the underlying tort action the plaintiff Wargo will bear the burden of proving that the conduct of the defendant was contrary to that which would be expected of an ordinary reasonable person under the same or similar circumstances.